UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-CR-0316-CVE |
| | ) |
| DONTA KEITH DAVIS, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court are defendant's motion to suppress identification testimony (Dkt. # 47), plaintiff's response to defendant's motion to suppress (Dkt. # 61), defendant's motion in limine regarding other crimes evidence (Dkt. # 48), and plaintiff's response to defendant's motion in limine (Dkt. # 60). On December 8, 2020, a grand jury returned a two-count indictment charging defendant with bank robbery with a dangerous weapon (count 1); and carrying, using, and brandishing a firearm during and in relation to a crime of violence (count 2). Dkt. # 5.

**I.     Motion to Suppress Identification Testimony (Dkt. # 47)**

Defendant requests that the Court exclude any pre-trial or in-court identification testimony by "certain proposed government witnesses identifying [defendant] as the culprit." Dkt. # 47, at 1.

    *a.     Relevant Factual Background*

Plaintiff alleges that in March 2018, defendant "robbed a bank and threatened to shoot two tellers and a bank manager." Dkt. # 61, at 1. Approximately five weeks later, after defendant was identified as a suspect, "Tulsa Police Detective Matt Hart presented photo arrays to the two tellers and the bank manager." Id. at 2. Detective Hart testified at a prior court proceeding that he handed to each witness, individually, six photographs of potential suspects; keeping the witnesses separated

from each other. Dkt. # 61-2, at 13-14. He informed the witnesses that the assailant "may or may not be in [the pictures presented] and it's up to [the witnesses] to decide . . . [and] to take their time." Id. at 14.

The Court has reviewed the six color photographs that Detective Hart handed to the witnesses (Dkt. # 47-3, at 1-6). The six potential suspects are all Black males who appear to be of similar age, build, skin tone, hair length, nose shape, and all six have some facial hair. The Court notes that there are some variations in background color, and defendant's background appears to be darker relative to the other potential suspects' backgrounds. Compare Dkt. # 47-3, at 2, with Dkt. # 47-3, at 1, 3-6. Additionally, two of the potential suspects, including defendant, have full beards, while the other four have some facial hair, but less than the potential suspects in photographs 2 (Dkt. # 47-3, at 2) and 6 (Dkt. # 47-3, at 6).

Defendant argues that "the detective's photo-array procedure violated his Due Process rights under the Fifth Amendment. . . . Alternatively, even if this Court finds that the photo-array procedure was not itself impermissibly suggestive, [defendant] asks this Court to nevertheless exclude all [prior identification testimony] because [it] stem[s] from inherently unreliable circumstances." Dkt. # 47, at 2. Thus, defendant argues, "the witnesses' ability to attempt to identify [defendant] as the assailant in his upcoming trial has been irreparably tainted." Id. Plaintiff responds that the photo-array process did not violate due process, was not unduly suggestive, and "the totality of the circumstances showed that the identification was reliable." Dkt. # 61, at 1.

> b.      *Whether the Photo Array was Impermissibly Suggestive*

The Tenth Circuit has found that when "the constitutionality of a photo array is challenged, the due process clause requires a two-pronged inquiry: first, the court must determine whether the photo array was impermissibly suggestive"; and second, "if it is found to be [impermissibly suggestive], then the court must decide whether the identifications were nevertheless reliable in view of the totality of the circumstances." United States v. Sanchez, 24 F.3d 1259, 1261-62 (10th Cir. 1994). "These two prongs must be analyzed separately, and it is only necessary to reach the second prong if the court first determines that the array was impermissibly suggestive." Id. at 1262. To determine whether an array is impermissible suggestive courts consider three factors: 1) "the number of photographs"; 2) "the details of the photographs"; and 3) "the manner of presentation by the officers." United States v. Worku, 800 F.3d 1195, 1203 (10th Cir. 2015) (citing Sanchez, 24 F.3d at 1262).

For the first factor, the number of photographs, the Tenth Circuit has held that "the number of photographs in an array is not itself a substantive factor, but instead a factor that merely affects the *weight* given to other alleged problems or irregularities in an array." Sanchez, 24 F.3d at 1262 (emphasis in original). Thus, "in six-photograph arrays, significant weight is given to irregularities." Worku, 800 F.3d at 1203. Here, the detective handed the witnesses six photographs. Dkt. # 61-2, at 13-14. Therefore, "the array must be scrutinized for suggestive irregularities[,]" and any irregularities or other alleged problems will be given significant weight. Sanchez, 24 F.3d at 1262-63; see also Worku, 800 F.3d at 1203.

The second factor, the details of the photographs, weighs in favor of finding that the photo-array was not impermissibly suggestive. In Worku, 800 F.3d at 1204, the Tenth Circuit found that,

3

despite differences in lighting and facial hair, six color photographs "depict[ing] Ethiopian men of similar ages" was a constitutionally adequate photo array. Id. Here, the photo array is six color photographs depicting men who look similar to each other with respect to skin color, facial features, hair length, build, and so forth. Moreover, similar to Worku, 800 F.3d at 1204, the potential suspects' physical similarities outweigh the variation in lighting (background color) and facial hair. Thus, the Court finds that the details of the photographs do not render the photo-array impermissibly suggestive.

The third factor, the manner of presentation by the officer, also weighs in favor of finding that the photo array was not impermissibly suggestive. Detective Hart testified that he kept the three witnesses separate and out of earshot from one another; handed each witness all six photographs, which were numbered one through six; instructed the witnesses that the assailant may or may not be depicted in the photographs; and that the witnesses should take their time looking through the photographs. Dkt. # 61-2, at 13-14, 18-19. Based on Detective Hart's testimony, there is no apparent indication that his manner of presenting the photo array to the witnesses was impermissibly suggestive. Defendant argues that the photo array was procedurally deficient because "Detective Hart admitted that rather than setting out all six photos for the witnesses to consider equally . . . he simply handed the stack of photos to the witnesses to peruse[.]" Dkt. # 47, at 6. However, defendant does not present evidence to substantiate the claim that handing the witnesses a stack of photographs, rather than setting them out for equal consideration, renders the manner of presentation impermissibly suggestive. The Court also notes defendant's argument that such manner of presentation is not Tulsa Police Department (TPD) standard procedure; however, diverging from standard TPD procedure is not a per se due process violation–the Court would need something more

that demonstrates that the manner of presentation was impermissibly suggestive. Defendant further argues that "Detective Hart admitted that it was sometimes his practice to tell a witness when they had identified the "right" suspect[.]" Id. at 6. Specifically, Detective Hart testified that he sometimes indicates to a witness that he concurs with their suspect identification, but "that would be after the fact[,]" and he does not "recall if [he] said that here." Dkt. # 61-2, at 20. The Court finds that defendant's argument goes to the reliability of the witnesses' subsequent identification testimony, but has no bearing on whether the photo array procedure that preceded the witnesses' initial identification of defendant was impermissibly suggestive.

In sum, the Court finds that based on 1) the number of photographs; 2) the details of the photographs; and 3) the manner of presentation by the officer, the at-issue photo array was not impermissibly suggestive. Because the Court finds that the photo array was not impermissibly suggestive, it need not reach the second prong of the due process analysis, that is, whether the identifications were nevertheless reliable in view of the totality of the circumstances. See Sanchez, 24 F.3d at 1262. Therefore, defendant's motion to suppress identification testimony on the basis that the photo array procedure violated defendant's due process rights should be denied.

    c.    *Whether the Identification Testimony Should Nonetheless be Suppressed*

Defendant argues that, pursuant to Fed. R. Evid. 403, even if the Court finds that the photo array was not impermissibly suggestive, all prior identification testimony as to defendant "stems from inherently unreliable circumstances[,]" and thus should be excluded. Dkt. # 47, at 2. Specifically, defendant argues that 1) because of the "witnesses' inability to get a good look at the assailant at the time of the crime, and the inconsistencies in their description[,]" the identification

5

testimony is "inherently unreliable"; and 2) "because the pretrial identification procedures were flawed" the identification testimony is "irreparably tainted." Id.

As a preliminary matter, because the Court found in Section b, supra, that the pretrial identification procedures were not impermissibly flawed, defendant's motion to suppress in-court identification testimony on that basis should be denied.

Further, under Rule 403, a court may exclude otherwise relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Unfair prejudice means that evidence has an "undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." United States v. Silva, 889 F.3d 704, 712 (10th Cir. 2018).  The Court finds that eyewitness testimony of the crime can be highly probative, and, if credible, is not unfairly prejudicial.  In other words, defendant's arguments as to the reliability of the eyewitness testimony goes to the weight, not admissibility, of the evidence.  Specifically, issues concerning the witnesses' opportunity to see the assailant's face, the consistency (or lack thereof) in the witnesses' descriptions of the assailant, and so forth, is a witness credibility issue, which is for the jury to determine.  Therefore, defendant's motion to suppress identification testimony should be denied.

## II.     Motion in Limine Regarding Other Crimes Evidence (Dkt. # 48)

Defendant "moves the Court to exclude statements made to law enforcement and other references that are irrelevant to the issues in this case." Dkt. # 48, at 1.  Specifically, defendant requests that the Court preclude 1) certain statements defendant made to Detective Hart during his recorded custodial interview; and 2) "any testimony from the Government's witness relating to or

mentioning the previous jury trial, his subsequent conviction, his sentence, or any reference to the fact that [defendant] is currently in [f]ederal court because of the McGirt decision." Dkt. # 48, at 1-2. Plaintiff responds that it "agrees not to discuss [defendant's] vacated state conviction for the same conduct charged here. Additionally, the government agrees to redact that recorded custodial interview to exclude the statements [defendant] articulated in his motion [(Dkt. # 48)]." Dkt. # 60, at 1. However, as to precluding any testimony related to the previous trial, plaintiff responds that "[s]tatements made by government witnesses in the Tulsa County Court preliminary hearing and trial setting may be admissible as substantive evidence under Fed. R. Evid. 801(d)(1)(A). . . . [And,] [a]ny statements that were not made under oath are admissible for impeachment purposes only." Id. at 1-2. Defendant was "convicted of robbery with a dangerous weapon and assault with a dangerous weapon in Tulsa County District Court after a jury trial." Id. Following the Supreme Court's decision in McGirt v. Oklahoma, 140 S. Ct. 2452 (2020), defendant appealed his conviction and "the Oklahoma Court of Criminal Appeals vacated his conviction and sentence." Id. Defendant now moves to exclude testimony from the state court's pretrial hearings, see, e.g., Dkt. # 61-2, and jury trial, Dkt. # 61-4.

As a preliminary matter, based on plaintiff's response (Dkt. # 60), defendant's motion in limine as to the specific statements (made during his custodial interview) that he mentions in his motion (Dkt. # 48, at 1-2) is moot.

Additionally, under Rule 801(d)(1)(A), a declarant's prior statement, that was subject to cross-examination, is not hearsay if the statement "is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition[.]" Fed. R. Evid. 801(d)(1)(A). In other words, if a witness's testimony at the upcoming trial is inconsistent

with that witness's statements from a prior trial or hearing, plaintiff may move at trial to admit the prior statements as substantive evidence. Further, even if the witnesses's statements were not made under oath, the Tenth Circuit has found that, under Fed. R. Evid. 607, a "witness' prior statements are admissible only to impeach or discredit the witness and are not competent substantive evidence of the facts to which the former statements relate." United States v. Carter, 973 F.2d 1509 (10th Cir. 1992) (internal quotations omitted). Therefore, the Court finds that defendant's motion in limine to preclude any testimony from witnesses relating to the previous trial should be preliminarily denied because there are certain circumstances in which such statements would be admissible under the Federal Rules of Evidence. However, defendant may raise any well-founded objections at trial.

**IT IS THEREFORE ORDERED** that defendant's motion to suppress identification testimony (Dkt. # 47) is **denied**, and defendant's motion in limine regarding other crimes evidence (Dkt. # 48) is **moot in part** as to certain statements made during his recorded custodial interrogation, and **denied in part** as to excluding witness testimony related to the previous trial.

**DATED** this 3rd day of February, 2022.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE